# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                          Plaintiff,

v.

BRADLEY L. TOLLEFSON,

                          Defendant.

Case No. 18-CR-43-JPS

# ORDER

## 1.    INTRODUCTION

The defendant, Bradley L. Tollefson ("Tollefson"), is charged in a two-count indictment with soliciting an underaged girl over the Internet to send him pictures of her performing sex acts. (Docket #10). On May 25, 2018, Tollefson filed separate motions to dismiss each count of the indictment. (Docket #21 and #22). On August 29, 2018, Magistrate Judge Nancy Joseph submitted a report and recommendation (the "Report") recommending that this Court deny Tollefson's motion to dismiss Count One in part and reserve ruling in part until a factual record is developed at trial. (Docket #38). Magistrate Joseph further recommended that the motion to dismiss Count Two be denied. *Id.*

Tollefson filed an objection to the magistrate's Report, (Docket #40), the government filed a response thereto, (Docket #41), and Tollefson filed a reply, (Docket #42). For the reasons stated below, Tollefson's objection will be overruled, the Report will be largely adopted, and Tollefson's motions to dismiss will be denied.

2.    **STANDARD OF REVIEW**

When reviewing a magistrate's recommendation, this Court is obliged to analyze *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* The Court's review encompasses both the magistrate's legal analysis and factual findings. *Id.*; *see also* Fed. R. Crim. P. 59(b).

3.    **RELEVANT FACTS AND PROCEDURAL HISTORY**

Tollefson does not dispute Magistrate Joseph's factual findings in the Report. The Court therefore adopts the magistrate's findings of fact for purposes of resolving Tollefson's motions. A summary of those facts, taken from the magistrate's Report and the evidence submitted in conjunction with the motions, is as follows.

On November 6, 2017, the Pierce County Sheriff's Office was dispatched to speak to a couple whose thirteen-year-old daughter, identified in the parties' motion papers as M.H., had been exchanging explicit pictures and videos online using her cell phone. A deputy interviewed the parents of M.H., who reported that M.H.'s grandmother had caught her talking to an older man on Skype. A Pierce County investigator then interviewed M.H., who admitted to communicating with two older men on Skype and Live.me. Both of them had asked her to "finger herself" and "show her boobs." M.H. told the investigator that she sent one video and fewer than ten photos of herself nude.

A forensic examination of M.H.'s phone revealed child pornography. Pierce County issued a subpoena to Live.me for the account information associated with one of the users with whom M.H. had

communicated and determined that user was Tollefson, a 43-year-old man living in the Milwaukee area with his longtime girlfriend and their five-year-old daughter. Tollefson apparently held himself out to be a fifteen-year-old boy named Chord Bennett and used as his profile picture an image of a teenager he found on the Internet. From another subpoena issued to Live.me, investigators obtained a log of private messages between M.H. and Tollefson. *See* (Docket #25). The log reflects that the chats between M.H. and Tollefson began sometime on or around October 16, 2017 with the following exchange:

> Tollefson: u r hot r u single
> MH: Yes
> Tollefson: age
> Tollefson: can I see pic u r so hot
> MH: 13 and no
> MH: So
> Tollefson: that is me
> MH: Not seeing it
> Tollefson: only can see it when off your live
> MH: Ok

(Docket #25 at 1–2). Sometime on the next day, M.H. reinitiated contact with Tollefson:

> MH: Can you plz give me a truth or dare
> Tollefson: ok hold on I like u btw
> MH: Ok
> MH: Yes
> MH: Idk
> MH: Ok
> MH: How
> MH: Can I just show you my tummy
> Tollefson: can u show tummy and top part 1 time for the dare
> MH: What

Tollefson: can u show tummy and chest

MH: Just tummy no chest

MH: Ok

Tollefson: take one in br@

MH: No

Tollefson: do u have one on

MH: Just tummy

Tollefson: ok

MH: Never mind I'll just take a pic

MH: There

Tollefson: there?

MH: There

Tollefson: can barely see it

MH: But you can still see it

Tollefson: just lift.up all the way I like small chests too is yours big or small

MH: No

Tollefson: do u have chest yet or no

MH: I'm not lifting up all the way

MH: Different dare now

MH: Are you still there

Tollefson: dare to show chest I'll send castle

Tollefson: plz

MH: Fine if you will dare me to do something else

MH: Deal

MH: There

Tollefson: under it for castle

MH: Then no

Tollefson: and I'll send one of under my boxers deal?

Tollefson: last 1 i promise

MH: No

Tollefson: or V

MH: What

Tollefson: ok bye I'll send castle to this other girl

> MH: Ok fine
> MH: There happy
> Tollefson: too close back the cam up so can see.them better
> MH: Ok
> MH: Happy
> MH: Different dare now
> Tollefson: lower cam more hard to see
> MH: Different dare

*Id* at 1–2. The "castle" Tollefson offered M.H. (and the "Porsche" he offered later in the chat) were virtual gifts offered in exchange for the photos. Live.me sells "coins," a type of virtual currency, which can be used to purchase gifts that appear as graphic icons within the Live.me app. When a viewer gives a broadcaster a gift, its value in "diamonds" is credited to the broadcaster's account. The broadcaster can convert the diamonds into coins, at a slightly lower rate, to purchase Live.me gifts for others or can cash them out into U.S. currency. The castle was the most valuable single gift available within Live.me and would have had a monetary value to M.H. of approximately $100. Sending and receiving virtual gifts also increases the user's status in the Live.me app in proportion to the value of the gift. Receiving a valuable gift would have increased the visibility of M.H.'s videos within the app, gaining her a larger audience and enabling her to send rating-boosting gifts to others.

The chats between M.H. and Tollefson continued, with M.H. continuing to ask for another dare. Tollefson's requests became increasingly more explicit:

> Tollefson: dare u to take underware off
> MH: Do I have to take a pic
> Tollefson: yes or take a vid of it
> MH: Done

MH: Different

MH: Dare

Tollefson: dare u to take video of u showing inside it spread it open with fingers

MH: Ok

MH: But can we do it at night

MH: Ok

Tollefson: can u just show that quick

MH: Because my brother is home and my dad will be home soon

Tollefson: go in bathroom quick and do it

*Id.* at 2. The dares continued before M.H. and Tollefson had the following exchange:

Tollefson: can u go get a hairbrush or like a makeup brush or something with round handle out it in u inside of finger it will feel like a dik in u will love it

Tollefson: if u do this u get castle and porshe

MH: Can I do it later when I'm in my room like after 3:00

Tollefson: do it quick I won't be home then

MH: Because then I'm not in the open

MH: What about tonight

Tollefson: go in your room or bathroom

MH: You will get lots of things tonight

MH: Or can I do it again

MH: Instead

Tollefson: can u just do that quick in bathroom go find a round handle of something

MH: Can I finger my self instead and send a vid

MH: Of me doing it

MH: Don't you like it when I finger my self

MH: Hello

MH: I'm doing it right now

Tollefson: ok

Tollefson: send it

Tollefson: is it starring to feel good?

MH: I sent two vid it's ok

Tollefson: go get a hairbrush with round handle it will feel better

MH: No one thanks

MH: It feels great all ready

Tollefson: have u done it before or no

MH: Yes

Tollefson: keep going until it gets really wet u will love it

Tollefson: go in and fast

Tollefson: in and out fast

MH: Got to go see you tonight

Tollefson: where u going

*Id.* at 3.

Tollefson asked M.H. whether she had ever done these things before and whether he was the first to witness them. He asked what grade she was in and M.H. responded, honestly, that she was in 8th grade. M.H. told Tollefson she "[didn't] like" making the explicit videos and sending them to him. *Id.* at 4. Their chat on Live.me ended with Tollefson asking M.H. to join him on Skype where he would give her more "dares."

Investigators concluded that the time when M.H. created the pornographic images and videos on her phone matched up with the time she and Tollefson communicated on Live.me.

**4.    ANALYSIS**

Tollefson objected to the magistrate's conclusions regarding both of his motions, which correspond to the two counts of the indictment. The Court will address each in turn.

**4.1    Count One**

Count One of the Indictment charges Tollefson with violating 18 U.S.C. § 2251, which penalizes the "sexual exploitation of children,"

commonly referred to as the production of child pornography. Section 2251(a) provides, in relevant part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e)[.]

18 U.S.C. § 2251(a). Knowledge of the victim's age is not an element of the offense. *See United States v. Fletcher*, 634 F.3d 395, 401 (7th Cir. 2011); *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 76, n.5 (1994). This is in contrast to other child pornography statutes penalizing the receipt, distribution, or possession of child pornography, where knowledge of the victim's age *is* an element. *See X–Citement Video*, 513 U.S. at 72 n.2 (comparing Section 2251 to Section 2252, which prohibits the interstate transportation, shipping, receipt, distribution, or reproduction of visual depictions of minors engaged in sexually explicit conduct). The logic of this discrepancy is that, unlike the recipient, distributor, or possessor of child pornography, the producer "confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *Id*. Therefore, Congress has placed the risk of mistake of age on the producer.

Tollefson moved to dismiss Count One on the ground that Section 2251 is unconstitutional, both on its face and as applied to him, because it imposes strict liability with regard to a victim's age even for people who confront the child victim over the Internet, not face-to-face. *See* (Docket #21).

Without face-to-face contact, he says, the pornography producer has no real opportunity to ascertain the victim's age. *Id.* at 15. The statute is facially overbroad in violation of the First Amendment, he argues, because it is likely to chill protected speech—namely, sexting and virtual roleplaying between adults—because it is difficult to confirm the age of online partners. *Id.* at 15–16. It is also unconstitutional as-applied to him, he says, because it imposes strict liability unfairly, given that he had no reasonable opportunity to learn the fact that made his actions criminal. Magistrate Joseph recommended denying Tollefson's facial overbreadth challenge and reserving ruling on his as-applied challenge.

### 4.1.1   Facial Versus As-Applied Challenge

To begin, the Court first notes the confusion in the parties' briefing as to whether Tollefson's challenge is primarily as-applied or facial, and whether he abandoned his facial challenge in objecting to the magistrate's Report. Tollefson states in his original motion that his challenge is both as-applied and facial, but he does not make distinct arguments to that effect. *See* (Docket #21 at 16). Magistrate Joseph construed his motion as presenting both types of challenges, but found that the thrust of Tollefson's argument was an as-applied challenge. (Docket #38 at 9). The government accuses Tollefson of abandoning his facial challenge at the objection stage, (Docket #41 at 3), and Tollefson counters by saying he incorporated all arguments from his original motion into his objection, (Docket #42 at 3).[1]

---

[1] Objections to a magistrate's report and recommendation must be specific and limited to those issues upon which the objector disagrees with the magistrate's analysis. Fed. R. Crim. P. 59(b)(2); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741 (7th Cir. 1999) (the objecting party must "specify each issue for which review is sought"). The report and objection process is, in essence, treated as an appeal. *See Coleman v. City of Ind.*, No. 1:17-CV-01561-JMS-MJD, 2018 WL 2093654, at *2 (S.D.

The standards for assessing facial versus as-applied challenges are quite different. A facial challenge to a legislative act is "the mo[re] difficult challenge to mount successfully[.]" *United States v. Salerno*, 481 U.S. 739, 745 (1987). To succeed on a facial challenge, the challenger must typically establish that no set of circumstances exists under which the law would be valid, or that the statute lacks any plainly legitimate sweep. *United States v. Stevens*, 559 U.S. 460, 472 (2010). In the First Amendment context, however, the Supreme Court has recognized another type of facial challenge, whereby "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* at 473 (quotation omitted). The overbreadth doctrine is "'strong medicine'" that should be "employed . . . with hesitation, and then 'only as a last resort.'" *New York v. Ferber,* 458 U.S. 747, 769 (1982) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973)). An as-applied challenge, on the other hand, "is one that charges an act is unconstitutional as applied to [the challenger's] specific activities even though it may be capable of valid application to others." *Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011) (citing *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 803 & n.22 (1984)).

Despite these varying standards, facial and as-applied challenges can overlap conceptually. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010)

---

Ind. May 7, 2018). Permitting a party to incorporate his original briefing into his objection briefing by reference defies the logic of this procedure, turning the objection process into a simple do-over before a different judge. Such incorporation would, of course, never be allowed by an appellate court. The Court will not penalize Tollefson for purporting to incorporate the arguments from his original motion into his objection, as it does not change the result. However, the Court expects that any future objection briefing before this Court conform to the proper objection procedure.

(describing a First Amendment challenge with elements of both); *Ctr. for Individual Freedom*, 697 F.3d at 475 (same). The relevant difference is in the relief sought. Where the claim and the relief that would follow "reach beyond the particular circumstances of [the plaintiff]," he must "satisfy [the] standards for a facial challenge to the extent of that reach." *Reed*, 561 U.S. at 194. Tollefson's motion has characteristics of both: it is "as applied" in the sense that it does not seek to invalidate Section 2251 in all its applications, but only to the extent it covers offenders who do not confront their victims face-to-face. His claim is "facial" in that it is not limited to Tollefson's particular case, but would apply more broadly to anyone who does not confront his victim face-to-face.[2] Because the Court does not find merit in Tollefson's arguments on the whole, whether cast as as-applied or facial, the title of his claim need not be parsed further.

### 4.1.2   Overbreadth Challenge

Tollefson's first argument relates to the statute's alleged overbreadth. He claims that because it is difficult to confirm the age of an online partner, adults seeking to engage in pornographic online chats, whose speech is protected under the First Amendment, will be chilled from doing so for fear of unintentionally violating Section 2251. Recall that to succeed on a First Amendment facial overbreadth challenge, the challenger must show that a substantial number of the law's applications are

---

[2]Tollefson argues, for example, that "it's not the facts of this case that render § 2251 unconstitutional. What renders § 2251 unconstitutional is its application to a common and constitutionally protected form of conduct and speech that a large number of people lawfully engage in on a daily basis." (Docket #34 at 1).

unconstitutional, judged in relation to the statute's plainly legitimate sweep. *Stevens*, 559 U.S. at 473.

The Seventh Circuit's decision in *Fletcher* forecloses this argument. In that case, the defendant presented an overbreadth challenge to Section 2251 based on an argument very similar to the one Tollefson advances here. The defendant, who had created pornographic videos of himself having sex with minors, argued that without the availability of a mistake-of-age defense, Section 2251 chills the production of legitimate pornography, especially pornography featuring young-looking (but majority-aged) actors. *Fletcher*, 634 F.3d at 404. The court of appeals held that Section 2251 withstood constitutional scrutiny without a mistake-of-age defense, even if it chilled the production of some small amount of legitimate pornography.

The court noted that the government has an "indisputably compelling interest in protecting children from the documented ills of child pornography." *Id.* at 402. The producer of child pornography "not only contributes to but is directly responsible for the exploitation of the child victim. Thus, § 2251(a) targets the very source of the harm. Recognizing a mistake-of-age defense would clearly be at odds with this compelling government objective." *Id.* at 404. Moreover, the court found, "Congress may legitimately conclude that even a willing or deceitful minor is entitled to governmental protection from 'self-destructive decisions' that would expose him or her to the harms of child pornography." *Id.* (quotation omitted).

Against these considerations, the court found that the "plainly legitimate sweep of the statute is outweighed by the *possibility* that the production of some protected pornography may be chilled." *Id.* at 404. In light of the economic incentive for legitimate pornography production, and

the fact that legitimate pornography producers are already required to verify and record actors' ages, the court found it "unlikely that pornography production will be *substantially* chilled in the narrow subset of pornography featuring 'youthful' appearing actors." *Id.* Therefore, the court upheld Section 2251 in favor of "providing the most protection possible for minors by requiring strict liability as to the age of the subject." *Id.*

The *Fletcher* court did not consider Section 2251's constitutionality in light of the virtual production of child pornography; the defendant in that case confronted the underage victims face-to-face. Nonetheless, the *Fletcher* court's analysis can reasonably be extended to this case. As to the statute's alleged overbreadth, Tollefson, like Fletcher, has not shown that Section 2251 reaches a "substantial" number of impermissible applications. *Id.* at 402. He references sexting and virtual role- or age-playing between adults, but does not offer evidence or argument about the prevalence of this activity, especially as between adults who do not already know each other (and therefore know that each is of the age of majority).

He argues that the deterring effect of Section 2251 is especially strong for online sexters and role-players because of the prevalence of catfishing in virtual spaces like Live.me. It may well be true that Live.me and other virtual spaces are rife with fake profiles and people lying about their ages. Even so, Tollefson has not established that any more than a small fraction of the population desires to participate in sexting and role-playing online with anonymous strangers, whose age is difficult to verify. There are fewer still who, after employing reasonable efforts to verify an online partner's age, would still be tricked. *Id.* at 404 ("[A]lthough the theoretical possibility exists that every diligent attempt at age verification may fail, we think such

a risk is small and does not create a 'substantial' burden on protected expression."). Tollefson, for example, undertook no efforts to verify his victim's age; she told him, honestly, that she was 13, and there ended his inquiry.

The relatively small fraction of protected speech that might be chilled by Section 2251 is contrasted against the wide scope of indisputably unprotected conduct that is punished under the statute. It applies, for example, where the defendant surreptitiously recorded himself having sex with a fifteen-year-old girl and provided her with drugs, cigarettes, and alcohol, *see United States v. Humphrey*, 608 F.3d 955 (6th Cir. 2010), or where the victim was the defendant's thirteen-year-old stepdaughter, *see United States v. Culver,* 598 F.3d 740, 744–45 (11th Cir. 2010), or his coworker's five-year-old son and two-year-old daughter, *see United States v. Grzybowicz,* 747 F.3d 1296, 1301 (11th Cir. 2014), or his own daughter, *see United States v. Oberg,* 877 F.3d 261 (7th Cir. 2017). Section 2251(a) is constitutional in all of those circumstances, and many more.

Therefore, the relatively small amount of legitimate speech associated with online role-playing that might be chilled by Section 2251, when balanced against the singular overarching importance of the government's interest in safeguarding the physical and psychological wellbeing of children, does not render Section 2251 unconstitutionally overbroad.

### 4.1.3   As-Applied Challenge

Tollefson's remaining argument centers on the alleged unfairness of the government applying Section 2251 to him, because he had no reasonable way of knowing M.H.'s age. His argument generally follows this line of logic: strict liability is constitutional only if the child pornography

producer confronts his victim face-to-face, because that is the only way for the producer to gain "knowledge of the only fact which makes his conduct a crime" (Docket #21 at 15); Tollefson did not confront his victim face-to-face; and therefore strict liability cannot attach to him. Magistrate Joseph characterized this argument as an as-applied challenge (under which constitutional provision, she did not say) and recommended reserving ruling until more facts are developed at trial about Tollefson's opportunity to learn M.H.'s age.

Tollefson also does not explicitly say which constitutional provision he believes underlies his major premise that Congress can impose strict liability (as to one element of an offense) only where the defendant has a reasonable opportunity to learn the fact that makes his conduct a crime.

Perhaps he believes it is the First Amendment, because the Supreme Court has expressed concern about the First Amendment implications of strict liability criminal statutes involving speech. *See Smith v. People of the State of Cal.,* 361 U.S. 147 (1959); *New York v. Ferber,* 458 U.S. 747 (1982); *Osborne v. Ohio,* 495 U.S. 103 (1990). True, the Supreme Court noted in *Ferber,* a child pornography case, that "criminal responsibility may not be imposed without some element of scienter on the part of the defendant." *Ferber*, 458 U.S. at 765 (citing *Smith,* 361 U.S. 147; *Hamling v. United States,* 418 U.S. 87 (1974)). The reason is that speech-burdening laws without a scienter element risk the chilling of protected speech. *See Smith,* 361 U.S. at 152–53. But this concern for overbreadth has already been addressed in this case; Section 2251 is not overbroad in violation of the First Amendment.

Further, "some element of scienter" does not mean that each element of the offense must include scienter. *See Hamling*, 418 U.S. at 121–23 (upholding obscenity distribution statute that required proof of knowledge

of the contents of the materials distributed, and knowledge of the character and nature of the materials, but did not require proof of knowledge of the legal status of the materials). And Section 2251 does contain an element of scienter: it proscribes the inducement of a minor to engage in sexually explicit conduct "for the purpose of producing" a visual depiction of such conduct. 18 U.S.C. § 2251(a). "Purpose" corresponds to the common-law concept of specific intent. *United States v. Bailey,* 444 U.S. 394, 405 (1980). Therefore, because Section 2251 requires proof of purposeful conduct as to the nature of the image being produced, is not the sort of strict liability statute barred by *Ferber. See United States v. Esch*, 832 F.2d 531, 536 (10th Cir. 1987); *United States v. Reedy*, 632 F. Supp. 1415, 1422 (W.D. Okla. 1986), *aff'd,* 845 F.2d 239 (10th Cir. 1988).

Perhaps Tollefson means to invoke the Fifth Amendment's due process clause. After all, he did mention the Fifth Amendment once in his original motion and the term "due process" once in his objection. Such an argument, even had it been more appropriately developed, also fails.

The Supreme Court has not ruled specifically when, if ever, the imposition of strict liability in a criminal statute by itself violates due process. *Powell v. Texas,* 392 U.S. 514, 535 (1968) ("[T]his Court has never articulated a general constitutional doctrine of mens rea."); *Morissette v. United States,* 342 U.S. 246, 260 (1952) ("Neither this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not. We attempt no closed definition, for the law on the subject is neither settled nor static."); *United States v. Parks*, 411 F. Supp. 2d 846, 855 (S.D. Ohio 2005), *aff'd,* 583 F.3d 923 (6th Cir. 2009) ("Today, 50 years later, there still is no criteria for determining when a

criminal intent is required and when it is not."). Instead, the legislature has wide latitude to declare what constitutes an offense against society and to define its elements. *Lambert v. California,* 355 U.S. 225, 228 (1957). This includes the authority "to exclude elements of knowledge and diligence" from the definition of an offense. *Id.*

Instead of grounding his as-applied challenge in the Constitution, where it must rest, Tollefson turns to principles of statutory construction. He chastises the government and the magistrate for failing to recognize what he calls the "guiding legal principle" in this case: the common-law presumption that each element of a statute that criminalizes otherwise innocent conduct carries a scienter requirement. (Docket #40 at 4–5); *see also Morissette,* 342 U.S. at 250 (describing the history of the presumption). As *Morissette* explained, statutes originating from the common law that prohibit sex offenses, like statutory rape, are excepted from this presumption, as are statutory public welfare offenses, like possessing an unregistered firearm or selling adulterated pharmaceuticals. *Morissette,* 342 U.S. at 243–49 & n.8; *see also Liparota v. United States,* 471 U.S. 419, 433 (1985). Tollefson argues that child pornography production (especially the online chatroom variety) is neither a public welfare offense nor statutory rape, and therefore Section 2251 should be subject to presumption that each of its elements carries a scienter requirement.

But the common-law presumption of scienter (and its recognized exceptions) has nothing to say about Congress' authority to enact strict liability schemes; the presumption is, instead, "a tool of statutory interpretation to be used when the language of the statute is unclear about what mental state, if any, is an element of the crime." *United States v. Ruggiero*, 791 F.3d 1281, 1286–87 (11th Cir. 2015) (citing *Morissette,* 342 U.S.

246). Both parties readily concede, as they must, that the Seventh Circuit (and every other circuit to consider the question) has found that Section 2251 does not include a scienter requirement as to the victim's age. *Fletcher*, 634 F.3d at 401 (collecting cases). This Court need not apply canons of statutory construction to determine if Congress intended to include knowledge of the victim's age as an element of a Section 2251 violation. That question is settled.

Tollefson also relies on the Supreme Court's decision in *X-Citement Video,* which involved Section 2252, the distribution counterpart to Section 2251's production prohibition, to support his statutory interpretation-based argument. 513 U.S. 64. The Court in that case undertook a statutory construction analysis to determine if the term "knowingly" as used in Section 2252 applied to certain elements of the crime, including the element concerning the minority of the victim. *See generally id.* The Ninth Circuit had held that Section 2252 did not require that knowledge and, as a result, it violated the First Amendment. *Id.* at 67. The Supreme Court reversed, but avoided the constitutional question by holding that Section 2252 actually does require proof that the defendant knew the victim was a minor. *Id.* at 78.

In reaching its holding, the *X–Citement Video* Court discussed, in dicta, some differences between Section 2252 and the section at issue here, Section 2251. First, the Court observed that Congress retained the adverb "knowingly" in Section 2252 while simultaneously deleting the word "knowingly" from an early proposed form of Section 2251. *Id.* at 76–77. The Court explained that

> [t]he difference in congressional intent with respect to § 2251
> versus § 2252 reflects the reality that producers are more

conveniently able to ascertain the age of performers. It thus makes sense to impose the risk of error on producers. Although producers may be convicted under § 2251(a) without proof they had knowledge of age, Congress has independently required both primary and secondary producers to record the ages of performers with independent penalties for failure to comply.

*Id.* at 77 n.5 (internal citations omitted).

Next, the Court found Section 2252 to be "akin to the common-law offenses against the state, the person, property, or public morals, that presume a scienter requirement in the absence of express contrary intent."

*Id.* at 71–72 (citation and internal quotation marks omitted). By contrast,

the common-law presumption of *mens rea* . . . expressly excepted sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached the age of consent. But as in the criminalization of pornography production at 18 U.S.C. § 2251(a), the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age. The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver. Thus, we do not think the common-law treatment of sex offenses militates against our construction of the present statute.

*Id.* at 72 n.2 (internal citations and quotation marks omitted).

Tollefson extrapolates from these statements a standard for determining Section 2251's constitutionality: "[I]n order to justify a strict liability application on the issue of age of minority, the offense must involve confrontation between the defendant and the child." (Docket #40 at 6–7). He believes that confrontation must be face-to-face (and thereby

distinguishes himself from other child pornography producers), and the government believes it does not.

But *X-Citement Video* says nothing about constitutionality—not even the constitutionality of Section 2252, let alone Section 2251. It is a case of statutory construction.[3] The Court references Section 2251 merely to explain why Congress reasonably decided to include a scienter requirement for Section 2252 and not Section 2251. In other words, these statements confirm the Court's understanding that Section 2251 does not require proof of knowledge of age (and why), but they say nothing about whether the statute, so interpreted, is constitutional, and with what exceptions. The constitutional standard that Tollefson divines from the *X-Citement Video* footnotes—that strict liability can only attach if the Section 2251 offender directly confronts his victim—is fiction.

Therefore, a Fifth Amendment due process challenge to Section 2251 does not depend on what the *X-Citement Video* Court meant by "confronts the underage victim personally." To succeed on a due process claim, Tollefson would have to demonstrate that the legislature's exercise of its

---

[3]As part of its statutory construction analysis, the *X–Citement Video* Court did make an observation about the potential *First Amendment* (not Fifth Amendment) implications if a scienter requirement was not read in to Section 2252. The Court noted that several of its First Amendment decisions "suggest that a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts," and "[i]t is therefore incumbent [on the Court] to read [§ 2252] to eliminate those doubts so long as such a reading is not plainly contrary to the intent of Congress." *Id.* at 78 (citing First Amendment overbreadth cases); *but see id.* at 83–85 (Scalia, J., dissenting). This is not a constitutional holding; it is but one reason the Court gave to explain its interpretation of the elements of Section 2252. Further, to the extent this statement has any relevance to the constitutional question in this case, it speaks to the potential for overbreadth, and the Court has already found Section 2251 not overbroad.

authority to enact a statute with strict liability as to knowledge of age, that covers virtual conduct, "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *United States v. Ransom,* 942 F.2d 775, 776–77 (10th Cir. 1991) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105 (1934)).

That is not the case here. Federal courts, including the Seventh Circuit in *Fletcher,* have uniformly rejected claims that the Constitution requires the government to prove that a child pornography producer knew his victim was underage, even if the defendant might have made a reasonable mistake as to the victim's age. *See Fletcher,* 634 F.3d at 403 ("[W]e reject Fletcher's contention that the Constitution necessarily requires a scienter element as to the age of the victim."); *see also United States v. Ruggiero,* 791 F.3d at 1288 (collecting cases). Although those cases primarily involved challenges under the First Amendment's overbreadth doctrine, not the Fifth Amendment, the courts did not find any fundamental unfairness in the lack of a scienter requirement. Tollefson's unique circumstance—that he confronted his victim only online—does not set him meaningfully apart from the defendants in those cases, and does not confer upon him a fundamental right to be free from the burden of verifying his victim's age.

Magistrate Joseph recommended reserving ruling on Tollefson's as-applied challenge so that the record could be developed with facts about Tollefson's opportunity to ascertain M.H.'s age (whether he heard her voice, for example). In light of this Court's finding that Section 2251 does not require knowledge of age, regardless of what opportunities, if any, the defendant had to learn the victim's age, the Court need not reserve its ruling. *See Ruggiero,* 791 F.3d at 1290 ("Because knowledge of age is not an

element of the crime, evidence of a lack of knowledge is irrelevant. And there is no right to introduce irrelevant evidence. Instead, 'it is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence.'") (quotation omitted).

For all of these reasons, the Court finds that Tollefson's motion to dismiss Count One must be denied in its entirety.

### 4.2    Count Two

Count Two of the Indictment charges Tollefson with violating 18 U.S.C. § 1591, which penalizes "[s]ex trafficking of children by force, fraud, or coercion." Section 1591(a) provides, in relevant part:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). The statute defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." *Id.* § 1591(e)(3). The items of value here are virtual, namely the "castle" and "Porsche" Tollefson offered to M.H. The term "sex act" is not defined in the statute.

Tollefson argues that masturbation—what Tollefson is accused of convincing M.H. to do and document in videos and photos for him—is not a "sex act" for purposes of Section 1591. The conduct Congress intended to punish with Section 1591, he says, is the commercial sexual abuse of minors, not the online exchange of photos and videos of masturbation. Because the facts as the government has charged them do not constitute a violation of Section 1591, Tollefson believes that Count Two must be dismissed. *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) (dismissal appropriate under Rule 12(b) when the allegations in the indictment are insufficient to state a claim under the charged statute).

In support of his argument, Tollefson relies on *United States v. Taylor*, 640 F.3d 255 (7th Cir. 2011), a case that did not concern Section 1591. Rather, the *Taylor* court considered whether convincing a child to masturbate in front of a webcam, or asking a child to watch an adult masturbate, constituted "sexual activity for which any person can be charged with a crime" as that phrase is used in the federal child enticement statute, 18 U.S.C. § 2422(b). *Id.* at 256–57. The term "sexual activity" is not defined in the statute (or anywhere in the criminal code).

The court turned to Section 2423, the section directly following Section 2422, which contains the term "illicit sexual conduct" and defines it as a "sexual act (as defined in section 2246) with a person under 18 years of age." *Id.* at 257 (citing 18 U.S.C. § 2423(f)). Section 2246 defines "sexual act" to include, among other things not relevant here, "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D). The court reasoned that if "sexual activity" and "sexual act" are

synonymous, then sexual activity, like a sexual act, must include physical contact with the victim, and masturbation would not fall within the definition. *Taylor*, 640 F.3d at 259. Confessing uncertainty about whether the two phrases indeed are synonymous, the court applied the rule of lenity to resolve the question in the defendant's favor. *Id*. at 260.

Tollefson implores the court to interpret "sex act" in Section 1591 the same way the *Taylor* court interpreted "sexual activity" in Section 2422. The Court agrees, instead, with Magistrate Joseph, who found the *Taylor* analysis inapplicable here. First and most obviously, the terms and statutes at issue are not the same; this Court is not bound to follow the Seventh Circuit's interpretation of a completely different law. Further, unlike the statute at issue in *Taylor*, Section 1591 contains its own definition section. For the definition of "commercial sex act," Congress chose not to cross reference Section 2246's definition of "sexual act." It certainly could have, as it did in Section 2423. Finally, the goals and objectives of the various statutes that comprise Title 18 are different, and therefore it does not necessarily follow that the terms "sex act" or "sexual act" or "sexual activity" all have the same meaning in each section.

In the absence of authority from the Seventh Circuit on how to construe the term "sex act" in Section 1591, this Court must apply the usual rules of statutory construction to determine its meaning. "Statutory interpretation begins with the plain language of the statute." *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009) (citation omitted). The court assumes that "the purpose of the statute is communicated by the ordinary meaning of the words Congress used; therefore, absent any clear indication of a contrary purpose, the plain language is conclusive." *Id.* This generally means looking to the meaning of the word "at the time the statute was

enacted, . . . often by referring to dictionaries[].” *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016) (quotations omitted).

Magistrate Joseph turned to the Oxford English Dictionary, which defines “sex act” as “a sexual action or activity, especially the act of sexual intercourse.” The same dictionary defines “masturbation” as “[t]he stimulation, usually by hand, of one’s genitals for sexual pleasure; the action or practice of masturbating oneself or (less commonly) another person.” Because stimulating one’s genitals for pleasure is a “sexual action or activity,” she reasoned, masturbation is a sex act. The government cited the Collins English Dictionary, Wiktionary, and International-Dictionary.com, which define “sex act” as “any act involving sexual stimulation.”

Tollefson replies by arguing that some narrower dictionary definitions of “sex act” that include language about the involvement of “another” would not encompass masturbation. He cites Merriam Webster, Vocabulary.com, and the Concise Oxford Dictionary, which define “sex act” as, respectively: “an act performed with another for sexual gratification,” “the act of sexual procreation between a man and a woman,” and “the act of sexual intercourse.”

The parties did not cite any dictionaries from the time of the statute’s enactment, which was 2000. The Court’s own research turned up a 2000 edition of Random House Webster’s Unabridged Dictionary, which defines “sex act” as “sexual intercourse; copulation.”

The Court finds that the ordinary meaning of sex act does not require physical contact; it includes masturbation. The narrowest definitions cited by Tollefson (and which the Court found independently) limit “sex act” to the ultimate sexual act—intercourse. The statute is clear that “sex act”

includes more than just intercourse: it defines "commercial sex act" as "*any* sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3) (emphasis added). The inclusion of the word "any" indicates that more than one type of sex act—*i.e.,* not just the ultimate sex act, intercourse—is encompassed in the definition. Therefore, the narrowest definition clearly does not apply. All of the other definitions cited by the magistrate and the parties (including the Merriam Webster definition on which Tollefson relies, "an act performed with another for sexual gratification") encompass acts of sexual gratification generally, and no one disputes that masturbation is an act of sexual gratification.

Therefore, the government's factual allegations in Count Two of the indictment are sufficient to state a claim under Section 1591. Tollefson's motion to dismiss Count Two will be denied.

**5. CONCLUSION**

Tollefson has not shown that Count One of the indictment violates his constitutional rights nor that Count Two of the indictment fails to state a claim. The Court will, therefore, overrule his objection, (Docket #40), adopt Magistrate Joseph's Report in all respects apart from her recommendation to reserve ruling on Tollefson's as-applied constitutional challenge, (Docket #38), and deny Tollefson's motions to dismiss, (Docket #21 and #22).

Should Tollefson wish to resolve this case short of trial and remain eligible for acceptance of responsibility credit, counsel for Tollefson must notify the Court of such intention, including the filing of a written plea agreement, within **twenty-one (21) days** from entry of this Order. Upon entry of this Order, the Speedy Trial date becomes April 4, 2019.

Accordingly,

**IT IS ORDERED** that Magistrate Judge Nancy Joseph's August 29, 2018 Report and Recommendation (Docket #38) be and the same is hereby **ADOPTED in part as reflected in this Order**;

**IT IS FURTHER ORDERED** and that the defendant's objection to the Report and Recommendation (Docket #40) be and the same is hereby **OVERRULED**; and

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss Count One (Docket #21) and Count Two (Docket #22) of the indictment be and the same are hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 15th day of February, 2019.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge